## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

ANTHONY ZAPPIN,

                    Plaintiff,

                - against -

ARONSON, MAYEFSKY & SLOAN, LLP,

                   Defendant.

-------------------------------------------------------------- X

Case No. 1:16-cv-7417-LGS

### PLAINTIFF'S MEMORANDUM OF LAW IN
### OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Anthony Zappin ("Plaintiff") hereby submits this memorandum of law in opposition to Defendant Aronson, Mayefsky & Sloan LLP's ("Defendant") motion to dismiss the November 25, 2016 Amended Complaint. Plaintiff alleges claims against Defendant for legal malpractice, intentional and negligent misrepresentation, excessive billing and violations of N.Y. Judiciary Law § 487 stemming from Defendant's representation of Plaintiff in his matrimonial proceeding, *Anthony Zappin v. Claire Comfort*, Index No. 301568/14 (N.Y. Sup. Ct.) ("Matrimonial Action" or "*Zappin v. Comfort*").[1] In moving to dismiss Plaintiff's claims, Defendant has not demonstrated that Plaintiff has failed to allege facts sufficient to state a claim for plausible relief in the Amended Complaint. Instead, Defendant largely attempts to improperly litigate the merits of Plaintiff's claims at the pleading stage. For the reasons set forth more fully below, Defendant's motion to dismiss should be denied.

---

[1] Plaintiff hereby drops his claims for Breach of Contract (Second Cause of Action), Violation of General Business Law § 349 (Fifth Cause of Action) and Tortious Interference with Parental Rights/Access (Seventh Cause of Action) alleged in the Amended Complaint.

## STATEMENT OF FACTS

Plaintiff hereby incorporates and relies on the facts alleged in his November 25, 2016 Amended Complaint.

## LEGAL STANDARD

In deciding a motion to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *SEC v. Lyon*, 529 F. Supp.2d 444, 449 (S.D.N.Y. 2008).  To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A motion to dismiss must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The Court's function on a motion to dismiss is not to "weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Beldon*, 754 F.2d 1059, 1067 (2d Cir. 1985).  Plaintiffs are not required to prove their case at the pleading stage as the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided." *Woodford v. Comm. Action Agency*, 239 F.3d 517, 526 (2d Cir. 2001).  The issue in a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support his claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

**ARGUMENT**

Plaintiff has sufficiently alleged claims for legal malpractice, intentional and negligent misrepresentation, excessive billing and violations of N.Y. Judiciary Law § 487.  Defendant has not demonstrated that these claims are inadequately pled or that Plaintiff has not alleged facts sufficient to state a claim for plausible relief in the Amended Complaint.  Instead, Defendant largely attempts to improperly litigate the merits of Plaintiff's claims at the pleading stage by submitting purported evidence in an attorney declaration.  For the reasons set forth below, Defendant's motion to dismiss should be denied.

I.      Defendant's Extraneous Material Improperly Included with Its Motion to Dismiss
        Must Be Rejected and Not Considered by the Court

Instead of addressing the sufficiency of the claims pled, Defendant's motion to dismiss is largely dedicated to attempting to litigate the merits of Plaintiff's claims through a Rule 12(b)(6) motion.  Defendant includes a series of cherry-picked,[2] unauthenticated e-mails and other documents in support of its motion to dismiss. Defendant's inclusion of these documents, particularly where they were proffered through an attorney declaration, was improper as a matter of law and the documents should not be considered by the Court at this juncture in the litigation.

In ruling on a motion to dismiss, the Court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits and any documents incorporated in the complaint by reference."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007); *see also Vaher v. Town of Orangetown, N.Y.*, 916 F.Supp.2d 404, 423 (S.D.N.Y. 2013) ("[I]n ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district

---

[2] To be sure, Defendant has included only a handful of e-mails out of several hundred pages of communications.  The fact that there are several hundred e-mails between Plaintiff and Defendant, the vast majority of which are omitted, is demonstrated by the page numbering on the e-mails contains in its exhibits.

court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein.").   Courts will occasionally consider documents outside the four corners of the complaint in resolving a Rule 12(b)(6) motion to dismiss where those documents are "integral to the complaint" or they must be documents "the plaintiff relied on."  *Vaher*, 916 F.Supp.2d at 423-24.   In order for the Court to look outside the complaint at a document the "plaintiff must rel[y] on the terms and effect of [the] document in drafting the complaint …; mere notice or possession is not enough."  *Bejaoui v. City of New York*, 2015 WL 1529633, at *5 (E.D.N.Y. March 31, 2015) (*citing Global Network Comms., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)).

In this instance, none of the exceptions allowing the Court to look beyond the four corners of the Complaint are applicable.  Plaintiff did not reference or incorporate by reference any of the alleged e-mail communications between Plaintiff and Defendant in the Amended Complaint. Defendant asserts, however, that the alleged e-mail communications are "integral" to the claims in the Amended Complaint.  This argument must fail.  The Second Circuit has held:

> A document is integral to the complaint where the complaint relies heavily upon its terms and effect.  Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotations from the document is not enough.  In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligation upon which the plaintiff's complaint stands or falls, but which for some reason … was not attached to the complaint.

*Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (internal quotation marks and citations omitted).  In the Amended Complaint, Plaintiff does not reference, much less rely on the terms and effect of any of these alleged e-mail communications.  Moreover, as the Second Circuit in *Goel* explains, such documents are simply not the types of documents that typically fall within the exception.  As a result, the Court should reject Defendant's attempts to litigate the merits of

Plaintiff's claims at the pleading stage through the alleged e-mail communications and not consider the extraneous documents included in Defendant's motion to dismiss. *See Calcutti v. SBU, Inc.*, 224 F.Supp.2d 691, 700 (S.D.N.Y. 2002) (holding that the court "does not address disputed questions of fact when ruling on a Rule 12(b)(6) motion" in a legal malpractice action).

Also, it should be noted that the vehicle in which Defendant introduced these extraneous documents – an attorney declaration from its counsel Jonathan Bruno – was improper requiring that the materials be rejected. "[W]hen matters outside the pleadings are presented in [connection with] a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). Rule 56(e) requires that affidavits "shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). "[W]here an affidavit is not based on personal knowledge, it may be stricken." *Mugno v. Societe Int'l De Telecommunications Aeronautiques, Ltd.*, 2007 WL 315573, at *8 (E.D.N.Y. Jan. 30, 2007). "The principles governing admissibility of evidence do not change on a motion for summary judgment … only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Raskin v. Wyatt Co.*, 125 F.3d 55, 56 (2d Cir. 1997).

Mr. Bruno's declaration states nowhere that it is being made on his "personal knowledge" as required by Rule 56(e). (*See* Bruno Decl. at 1-3.) Mr. Bruno further cannot attest to the authenticity of the alleged e-mail *communications* between Plaintiff and Defendant because he lacks any personal knowledge as to their authenticity. *See Dawe v. Corrections USA*, 2010 WL 682321, at *1 (E.D.Cal. Feb. 24, 2010) ("[D]efendants attached numerous document produced in

discovery as exhibits 'authenticated' by defendants' counsel.  Such authentication is clearly improper because defendant's counsel has failed to demonstrate any personal knowledge as to the authenticity of these documents, and therefore the court has not considered them in this motion."); *Eaton v. Kindred Nursing Centers West, LLC*, 2005 WL 1185802, at *8 (D.Me. May 19, 2005) (holding attorney could not authenticate client's personnel records); *Jongeward v. BNSF Railway Co.*, 2010 WL 1372696, at *3 (E.D.Wash. April 6, 2010) (rejecting documents where "[p]laintiff's counsel … declare[d] that a copy of the Report, attached to counsel's declaration, [was] 'true and correct' but offer[ed] no personal knowledge of the document's preparation"); *Paulus v. Holimont, Inc.*, 100 F.Supp.3d 292, 301 (W.D.N.Y. 2015) (rejecting photographs submitted in connection with summary judgment motion where "[d]fendant relie[d] soly on its attorney's affidavit to authenticate the photographs").  As a result, the e-mail communications and other documents that cannot be judicially noticed should not be considered by the Court where Defendant has improperly attempted to authenticate them through an attorney declaration.

Plaintiff further points out that the court documents Defendant requests the Court take judicial notice of are not reliable.  Specifically, Defendant includes a copy of the docket sheet for *Zappin v. Comfort* from the New York Unified Court System's website.   The docket sheet is not accurate.  For instance, Defendant claims that Plaintiff subsequently sought an order of protection against his ex-wife after terminating Defendant as his counsel.  Plaintiff, however, never sought an order of protection in New York County Supreme Court against his ex-wife.  Rather, what Defendant points to is a motion Plaintiff made seeking an order of protection against his ex-wife on behalf of the child after the child appeared at a visitation with bruising and hand marks on his face and buttocks. Defendant's reliance on these often imprecisely and/or inaccurately recorded

docket sheets only underscores the flaws in Defendant's legal arguments and demonstrates that there are triable issues of fact in this case with respect to Plaintiff's claims.

Even if the Court were to consider these documents, Defendant arguments in support of dismissal of the Amended Complaint premised on these extraneous documents must fail. The e-mail communications that Defendant rely on in arguing Plaintiff's Amended Complaint should be dismissed are largely irrelevant even if the Court were to consider them.[3] For instance, Defendant includes select e-mails between Plaintiff and Defendant concerning supervised visitation. At most, these e-mails show little more than Plaintiff's mounting frustration with the trap Defendant had laid by consenting to supervised visitation. Likewise, Defendant includes a series of e-mails from May to June 2014 where Plaintiff provides updates as to his sessions with the forensic custody evaluator. Contrary to Defendant's assertion, these e-mails cannot be construed as some sort of acquiesce by Plaintiff to Dr. Alan Ravitz's appointment where the matrimonial court had directed him to conduct the investigation in an order from April 2014 based on the fact that Defendant had already consented to Dr. Ravitz performing the evaluation. Regardless, these communications are a fraction of the communications that Plaintiff and Defendant exchanged and Plaintiff should be provided an opportunity to prove his case with all the relevant evidence.

---

[3] In most instances, Defendant's e-mails merely confirm Plaintiff's allegations. For instance, several of the e-mails show Plaintiff requesting that Defendant file a formal motion for unsupervised visitation. (*See* Bruno Decl. at Exhibit E.) Another set of e-mails show Defendant inquiring as to two trusts held by Plaintiff's father, no doubt an attempt by Defendant to assess how far they could churn the litigation after Plaintiff's parents signed a guarantee to pay his legal fees. (*See id*; *see also* Amended Compl. at ¶ 16.) At that stage in the litigation, the financial portion of the Matrimonial Action was put "on hold" until custody was resolved. And, Defendant's July 8, 2014 e-mail (the day Plaintiff fired Defendant) shows Defendant acknowledging that a motion was necessary on the issue of unsupervised visitation after billing Plaintiff over $64,000 in less than five months for off-the-record hearings. (*See* Bruno Decl. at Exhibit E.)

II.     Plaintiff Has Sufficiently Plead a Claim of Legal Malpractice

Defendant contends that Plaintiff's claim for legal malpractice should be dismissed. However, virtually every contention made by Defendant in requesting dismissal would require Plaintiff to prove his entire case at the pleading stage of the litigation.   Moreover, Defendant erroneously claims that Plaintiff has failed to plead essential elements such as causation and damages.   Defendant's contention, however, ignores the fact that the Amended Complaint alleges and details that the unfavorable outcome of the Matrimonial Action can be directly tied back to their negligent conduct, which could have been entirely avoided had Defendant acted to preserve Plaintiff's interests at the most critical time in any custody litigation – the outset of the case.   For these reasons, Defendant's motion to dismiss the claim of legal malpractice in the Amended Complaint must fail.

In New York, "[i]n deciding a motion to dismiss a legal malpractice action, the facts alleged by plaintiff are assumed to be true, and plaintiff is afforded the benefit of every possible favorable inference." *Mercantile Capital Partners, L.P. v. Morrison Cohen, LLP*, 2008 WL 1777432, at *3 (N.Y. Sup. 2008) (citations omitted).   In order to state a claim for legal malpractice under New York Law, a Plaintiff must allege "(1) the negligence of an attorney; (2) the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages." *Rondout Landing at the Strand, Inc. v. Hudson Land Dev. Corp.*, 361 F.Supp.2d 218, 223 (S.D.N.Y 2005).   To establish causation adequately in a legal malpractice claim, the plaintiff must show that, but for the attorney's negligence, "what would have been a favorable outcome was an unfavorable outcome. The test is whether a proper defense would have altered the result of the prior action." *D'Jamoos v. Griffith*, 2001 WL 1328592, at *5 (E.D.N.Y. Aug. 1, 2001); *see also Pellegrino v. File*, 738 N.Y.S.2d 320, 323 (1st Dept. 2002).   "At this early stage of a litigation, however, Plaintiff need

only allege, not prove, the proximate cause element of the legal malpractice claim." *Even Street Productions, Ltd. v. Shkat Arrow Hafer & Weber, LLP*, 643 F.Supp.2d 317, 322 (S.D.N.Y. 2008); *see also Abuhouran v. Lans*, 269 F. App'x 134 (2d Cir. 2008) (observing that to state properly a claim for legal malpractice based on an underlying criminal proceeding, plaintiff must only allege his innocence, or a color claim of his innocence).

     A.    *Plaintiff Has Sufficiently Pled That Defendant Committed Legal Malpractice Consenting to Dr. Ravitz as the Forensic Custody Evaluator*

Plaintiff contends that Defendant's consenting to Dr. Alan Ravitz as the forensic custody evaluator, especially without informing Plaintiff and without first requesting a *pendente lite* hearing, constituted legal malpractice. (*See* Amended Compl. at ¶¶ 33-46.) In *Zappin v Comfort*, one of the primary issues was the parties' competing family offense allegations. In his forensic custody evaluation report, Dr. Ravitz extensively opined on Plaintiff's and his ex-wife's claims of violence towards each other. (*See id.* at ¶¶ 40-43.) In rendering his opinions, Dr. Ravitz concluded that Plaintiff was the aggressor purely based on the sexist and outmoded philosophy that Plaintiff was bigger and "stronger" than his ex-wife. (*See id*. at ¶ 41.) Due to the overwhelming influence forensic custody evaluators have on matrimonial courts in fashioning custody, the matrimonial court accepted Dr. Ravitz's flawed opinions.

The Amended Complaint sufficiently alleges facts to demonstrate that Defendant's consenting to Dr. Ravitz as the forensic custody evaluation was negligent. Plaintiff alleges that Defendant was well-aware of Dr. Ravitz's qualifications and expertise having previously worked with him. (*See id*. at ¶¶ 40-46.) Defendant was no doubt aware that Dr. Ravitz was not an expert in the field of family violence. (*See id*.) Dr. Ravitz openly admitted that he was not an expert in family violence during cross-examination. (*See id*.) Moreover, Defendant knew that the central issue in *Zappin v. Comfort* were the parties' claims of family offenses. (*See id*.) Defendant,

however, took no steps to find or propose to the matrimonial court a forensic custody evaluator with training and expertise in the complex dynamics of family violence, a field in which there persists gender stigmas and other multifaceted issues.  (*See id*.)  Defendant instead simply consented to Dr. Ravitz's appointment upon seeing that Plaintiff's ex-wife intended to propose his appointment to the matrimonial court.  (*See id*.)  Moreover, Defendant consented to Dr. Ravitz's appointment without consulting or informing Plaintiff, thus preventing Plaintiff from objecting to Dr. Ravitz.  (*See id*.)  Put simply, a matrimonial attorney exercising reasonable care and diligence would not have consented to the appointment of an unqualified expert, particularly without their client's consent, and would have taken steps to, at the very least, propose to the matrimonial court that a qualified expert be selected.

Furthermore, the Amended Complaint alleges that Defendant's negligent conduct of consenting to Dr. Ravitz's appointment was the proximate cause of several injuries.  (*See id*. at ¶¶ 40-43.)  Plaintiff contends in the Amended Complaint that Dr. Ravitz's unqualified opinions without question tainted the outcome of the Matrimonial Action where the matrimonial court was in essence forced to accept them given the unique position of being the court-appointed forensic custody evaluator.  (*See id*.)  Defendant asserts that the outcome of the Matrimonial Action, which was decided against Plaintiff, confirms that Defendant was not the proximate cause of Plaintiff's injuries.  However, Plaintiff has alleged that had a competent forensic evaluator been proposed by Defendant to the matrimonial court with requisite experience in family violence capable of interpreting the evidence and conducting a thorough investigation in the claims, the outcome of the matrimonial proceeding would have been dramatically different and favorable to Plaintiff such that he would not have suffered damages.  (*See id*.)

Furthermore, Plaintiff has alleged actual damages in connection with Defendant's negligent conduct of consenting to the appointment of Dr. Ravitz. (*See id*. at ¶ 43.)  This includes, but is not limited to, fees paid to Dr. Ravitz, the cost of continued supervised visitation, the cost of experts necessary to attempt to rebut Dr. Ravitz's report and counsel fees expended in connection with those experts.  (*See id*.)  Accordingly, Defendant's contention that Plaintiff has not plead actual or ascertainable damages is without merit.

It should be noted that Defendant contends that it should not be liable because Plaintiff and his subsequent counsel had a sufficient opportunity to protect Plaintiff's interests.  This is simply not true.  Dr. Ravitz's custody evaluation began in May 2014 and concluded in August 2014.  He rendered a report on September 8, 2014.  The custody trial began on September 15, 2014, where Dr. Ravitz testified as the matrimonial court's witness.  Although Defendant was fired as Plaintiff's counsel near the end of Dr. Ravitz's investigation, there was no opportunity to correct Defendant's negligence in consenting to Dr. Ravitz as the forensic custody evaluator given the timeframe.  Moreover, after both Plaintiff and his ex-wife spent nearly a $100,000 combined on Dr. Ravitz's fees during the forensic custody evaluation, it was virtual certainty that the matrimonial court was not going to order a new forensic custody evaluation, particularly where Defendant had consent to Dr. Ravitz on Plaintiff's behalf in the first place.  Nevertheless, Defendant's contention raises a question of fact as to whether Plaintiff and his subsequent counsel had a reasonable opportunity to protect Plaintiff's interests, which should not be decided in the pleading stage.

### B.    *Plaintiff Has Sufficiently Alleged that Defendant Committed Legal Malpractice by Consenting to a Forensic Custody Evaluation without a Pendente Lite Hearing*

Plaintiff further alleges that Defendant was negligent in consenting to a forensic custody evaluation without first requesting a *pendente lite* hearing.  (*See* Amended Compl. at ¶¶ 44-46.) In *Zappin v. Comfort*, there were several contested issues of fact, most notably the parties' family

offense allegations, that should have been resolved by the matrimonial court at the outset of the case prior to the appointment of a forensic custody evaluator.  (*See id*.)  In fact, Plaintiff was entitled to such a hearing.   *See Carlin v. Carlin*, 52 A.D. 559, 560 (N.Y. 2008) ("As a general rule, while temporary custody may be properly fixed without a hearing where sufficient facts are shown by uncontroverted affidavits, it is an error as a matter of law to make an order respecting custody, even in a *pendente lite* context, based on controverted allegations without having the benefit of a full hearing.")  The parties' family offense allegations were issues of fact to be decided by the court, not a forensic custody evaluator (even a qualified one).  By consenting to a forensic custody evaluation, Defendant in essence agreed to defer fact-finding to the forensic custody evaluator, which no reasonable attorney would do.  Indeed, Defendant's own notes show that they have had reservations about the idea.  (*See* Amended Compl. at ¶¶ 44-46.)

By negligently consenting to a forensic custody evaluation without the benefit of first having a *pendente lite* hearing to determine factual issues, the Amended Complaint alleges that Defendant's conduct was the proximate cause of injuries Plaintiff sustained.  (*See id* at ¶¶ 44-46.)  Here, Dr. Ravitz became a *de facto* factfinder of the parties' family offense allegations, despite having no legal training and being admittedly unqualified to opine on the subject.  (*See id*.)  Dr. Ravitz's opinions without question muddled and tainted the outcome of the Matrimonial Action.  (*See id*.)  Had Defendant exercised reasonable diligence in protecting Plaintiff's interests by requesting a *pendente lite* hearing prior to the forensic custody evaluation, the matrimonial court could have decided the factual issues in *Zappin v. Comfort* based on documentary evidence instead of unqualified opinions.  Likewise, the forensic custody evaluation could have proceeded based on the matrimonial court's fact-findings rather than an "investigation" by the forensic custody evaluator.  Moreover, a *pendente lite* fact-finding would have no doubt disposed of not only the

need for a forensic custody evaluation, but the entire litigation in the cases infancy.  (*See id*.)  Thus, the outcome in *Zappin v. Comfort* would have been different had Defendant properly requested a *pendente lite* hearing at the outset of the litigation rather than consenting to a forensic custody evaluation.  (*See id*.)

Moreover, contrary to Defendant's assertion, Plaintiff has alleged actual damages in connection with Defendant's negligent conduct of consenting to a forensic custody evaluation without first requesting a *pendente lite* hearing.  (*See id*. at ¶ 46.)  This includes, but is not limited to, fees paid to Dr. Ravitz in connection with the forensic custody evaluation, the cost of continued supervised visitation, fees paid to Defendant and various other litigation expenses.  (*See id*.)  Accordingly, Plaintiff has alleged sufficient facts in the Amended Complaint to support a claim of legal malpractice based on Defendant's conduct.

C.    *Plaintiff Has Sufficiently Alleged that Defendant Committed Legal Malpractice by Consenting to Supervised Visitation Instead of Formally Requesting a Pendente Lite Hearing on the Issue*

Plaintiff also asserts in the Amended Complaint that Defendant was negligent in consenting to supervised visitation at CFS (again without Plaintiff's consent) without requesting a *pendente lite* hearing at the outset of the case.[4]  (*See* Amended Compl. at ¶¶ 47-51.)  Defendant's conduct was negligent for three reasons.  First, as mentioned above, Plaintiff was entitled to a *pendente lite* hearing at the outset of the litigation before the matrimonial court affixed custody.  *See Coon v. Coon*, 814 N.Y.S.2d 781 (3rd Dept. 2006) (holding that the trial court erred by granting temporary custody to mother without first conduct an evidentiary hearing); *Hizme v. Hizme*, 622 N.Y.S.2d

_____

[4] Defendant alleges that Plaintiff sought a *pendente lite* hearing after he discharged Plaintiff which was denied.  This is not true.  Plaintiff was granted a *pendente lite* hearing to commence on September 15, 2015 on the limited issue of supervised visitation.  However, it was converted to a full custody trial over Plaintiff's objection after Dr. Ravitz's submitted his forensic custody report.

737 (2nd Dept. 1995) (holding that trial court erred by making a custody order based on controverted allegations without a fulling hearing to resolve the issues which developed from conflicting assertions). Defendant knew that Plaintiff vehemently disputed his ex-wife's family offense allegations. By consenting to supervised visitation, Defendant in effect conceded to Plaintiff's ex-wife's family offense allegations. (*See* Amended Compl. at ¶¶ 47-51.) This negative inference impacted Plaintiff in subsequently attempting to controvert those allegations both before the forensic custody evaluator and during the trial before the matrimonial court. (*See id*.)

Second, Defendant's conduct was negligent because it subsequently required Plaintiff to prove a heightened burden of a "substantial change in circumstances" in order to have unsupervised visitation with his child. "It is well settled that to modify an existing custody arrangement, the parent must demonstrate that a substantial change in circumstances occurred that necessitates a modification to further the best interests of the child." *Hurlburt v. Behr*, 897 N.Y.S.2d 271, 274 (3rd Dept. 2010). This heighten burden was virtually impossible for Plaintiff to overcome given that there were no changes in the circumstances of the parties since Defendant consented to supervised visitation and the parties' contested factual allegations remained.

Lastly, Defendant consented to supervised visitation at Comprehensive Family Services at a rate of $150 per hour. (*See* Amended Compl. at ¶¶ 48-49.) This was highly cost prohibitive to Plaintiff, particularly where there are much cheaper alternatives. (*See id*.) By binding Plaintiff to supervised visitation at that rate, it substantially and unnecessarily diverted Plaintiff's resources from litigating and defending the Matrimonial Action and essentially cemented continued indefinite supervised visitation at Comprehensive Family Services causing Plaintiff financial ruin. (*See id*. at ¶¶ 47-51.)

By negligently consenting to supervised visitation without a *pendente lite* hearing, the Amended Complaint alleges that Defendant's conduct was the proximate cause of the injuries sustained by Plaintiff.  (*See id*. at ¶¶ 50-51.)  Had Defendant requested a *pendente lite* hearing at the outset of the litigation, Plaintiff would not have had the adverse inference of effectively having conceded to his ex-wife's family offense allegations.  Moreover, Plaintiff would not have been forced to prove a "substantial change in circumstances" in order to modify his visitation from supervised to unsupervised.  And, Plaintiff would not have been forced to absorb the expensive cost of supervised visitation at Comprehensive Family Services at a rate of $150 per hour, where cheaper alternatives existed.  These added burdens, which resulted from Defendant's conduct, made it virtually impossible for Plaintiff to prevail in the Matrimonial Action.  Indeed, Plaintiff alleges that had Defendant exercised reasonable diligence and care in protecting Plaintiff's interests by requesting a *pendente lite* hearing to which he was entitled, the outcome of the Matrimonial Action would have been dramatically different and favorable to Plaintiff.  (*See* Amended Compl. at ¶¶ 47-51.)

Again, contrary to Defendant's claim, Plaintiff has alleged actual damages in connection with Defendant's negligent conduct of agreeing to supervised visitation without first formally requesting a *pendente lite* hearing.  (*See id*. at ¶ 46.)  This includes, but is not limited to, fees paid to Dr. Ravitz in connection with the forensic custody evaluation, the cost of continued supervised visitation, fees paid to Defendant and various other litigation expenses.  (*See id*.)

D.   *Plaintiff Has Sufficiently Pled that Defendant Committed Legal Malpractice by Only Requesting Unsupervised Visitation During Off-The-Record Proceedings*

Plaintiff further asserts that Defendant was negligent by failing to make a formal application for unsupervised visitation in the Matrimonial Action and instead making purported off-the-record requests only to acquiesce to more supervised visitation for Plaintiff.  (*See* Amended

Compl. at ¶¶ 48-51.)  Defendant's conduct was harmful and negligent because it failed to preserve Plaintiff's objection to supervised visitation, particularly for later appeal, and further cemented a parenting arrangement of *de facto* permanent supervised visitation.  (*See id.*)   Plaintiff alleges in the Amended Complaint that as a proximate result of Defendant's negligent conduct Plaintiff sustained injuries that would otherwise been avoided, including but not limited to, unnecessary prolonged supervised visitation, a heightened burden when requesting unsupervised visitation, an adverse inference at trial and the waiver of a *pendente lite* hearing.  (*See id.*)  These added burdens made it virtually impossible for Plaintiff to prevail in the Matrimonial Action.  Plaintiff's actual ascertainable damages as a result of Defendant's negligent conduct include Defendant's legal fees, the cost of supervised visitation and subsequent legal fees incurred attempting to repair the damage caused by Defendant.  (*See id*. at ¶ 51.)  Accordingly, contrary to Defendant's position, Plaintiff has sufficiently pled a claim for legal malpractice.

> E.    *Plaintiff Has Sufficiently Alleged that Defendant Committed Legal Malpractice by Failing to Seek Appropriate Discovery During the Forensic Evaluation*

Plaintiff alleges in the Amended Complaint that Defendant was negligent in failing to seek discovery from Plaintiff's ex-wife during the forensic custody evaluation.  (*See* Amended Compl. at ¶¶ 54-57.)  This included medical records, digital copies of photographs and actual screenshots of text messages.  (*See id*.)  A matrimonial attorney exercising reasonable diligence and care would have sought such discovery, particularly where the evidence proffered to Dr. Ravitz by Plaintiff's ex-wife was suspect on its face and the attorney was aware of medical records that may refute claims asserted against his or her client.   Indeed, the additional information proved vitally important because once it was produced well-after the forensic custody evaluation, Plaintiff's ex-wife's photographs and text messages turned out to be altered.  (*See id*.)  However, because Defendant negligently failed to seek the discovery during the forensic custody evaluation, Dr.

Ravitz could not consider evidence relating to the alterations or medical records refuting Plaintiff's ex-wife's family offense allegations and based his report solely on the parties' self-reporting. (*See id*.)

Had this discoverable information been timely requested by Defendant and presented to Dr. Ravitz, the Amended Complaint alleges that it would have changed Dr. Ravitz's report and the outcome of the Matrimonial Action.   (*See id*. at ¶ 57.)   Therefore, as a proximate result of Defendant's negligence, Plaintiff was not able to fully and fairly litigate his claims or assert a defense leading to an adverse outcome.   (*See id*.)   Plaintiff alleges that he suffered actual ascertainable damages in the form of continued supervised visitation costs and legal fees incurred attempting to repair the damage Defendant's conduct caused.   (*See id*.)   Plaintiff has consequently alleged sufficient facts to support his legal malpractice claim.

> F.     *Plaintiff Has Sufficiently Alleged that Defendant Committed Legal Malpractice by Telling Plaintiff Not to Pay Child Support Based on a Purported Agreement with Opposing Counsel that it Negligently Failed to Reduce to Writing*

Lastly, Plaintiff alleges that Defendant was negligent in advising Plaintiff that he did not have to pay child support.   (*See* Amended Compl. at ¶¶ 52-53.)   Specifically, the Amended Complaint asserts that Defendant represented to Plaintiff that it had reached an agreement with Plaintiff's ex-wife's counsel that she would forego child support if Plaintiff bore the cost of supervised visitation.   (*See id*.)   Defendant was negligent and never reduced this agreement to writing, which a matrimonial attorney of ordinary skill would without question do to protect their client's interests.[5]   (*See id*.)

---

[5] Defendant also never sought a *pendente lite* order from the matrimonial court at the outset of the case defining the parties' financial obligations, which would have no doubt included provisions for dividing the cost of supervised visitation and *pendente lite* child support.   (*See id*.)

Meanwhile, Plaintiff paid over $200,000 in supervised visitation costs during the two years the Matrimonial Action was pending based on Defendant's representations concerning an agreement with opposing counsel.  It should be noted that courts typically require spouses with similar incomes – like Plaintiff and his ex-wife at the time – to share the cost of supervised visitation.  *See Licitra v. Licitra*, 232 A.D.3d 417, 418 (2nd Dept. 1996) ("[G]iven the mother's limited resources, the Family Court erred in directing her to pay the costs of supervised visitation."); *Hover v. Shear*, 232 A.D.2d 749, 750 (3rd Dept. 1996) ("[W]e are not persuaded that [sic] Family Court erred in requiring the parties share the cost of supervised visitation."); *Karen K. v. Kenneth Z.*, 657 N.Y.S. 40, 41 (1st Dept. 1997) (affirming trial court's order that custodial parent pay for non-custodial parent's supervised visitation).  Defendant never sought an order from the matrimonial court requesting that Plaintiff's ex-wife share in the cost of supervised visitation or define his monthly *pendente lite* child support obligation.

At a financial trial in June 2016, Plaintiff was unable to prove that Defendant and Ms. Comfort's counsel had made an agreement concerning child support and the cost of supervised visitation because Defendant negligently failed to reduce it to writing.  Plaintiff was subsequently ordered to pay child support arrears, which amounted to over $41,000.  (*See* Amended Compl. at ¶¶ 52-53.)  The Amended Complaint alleges that but for Defendant's negligence in failing to reduce Defendant's oral agreement with opposing counsel to writing, Plaintiff would not have suffered economic injury of both bearing the full cost of both supervised visitation and paying child support arrears. (*See id.*)  Plaintiff's damages are quantifiable as either being one-half the cost of supervised visitation or the child support arrearage.  Accordingly, Plaintiff's legal malpractice claim has been sufficiently pled and should not be dismissed.  *See Kock v. Sheresky, Aronson & Mayefsky LLP*, 2009 N.Y. Slip. Op. 31520(U) (N.Y. Sup. Ct. July 7, 2009) (denying

18

Defendant's motion to dismiss legal malpractice claim where plaintiff alleged damages as a result of Defendant failing to seek various *pendente lite* relief on its behalf).

> G. *Defendant's Arguments Should Be Rejected Where the Allegations in the Amended Complaint Raise Questions of Fact*

Defendant contends that Plaintiff's legal malpractice claims must be dismissed because Plaintiff has failed to show that Defendant was the "but for" or proximate cause of Plaintiff's injuries. However, the above sections detail that Plaintiff has alleged specific negligent acts by Defendant that are tied to ascertainable injuries. Moreover, Plaintiff has alleged that the outcome Matrimonial Action would have been decidedly different but for Defendant's negligent acts. Where Plaintiff has alleged facts to support a "but for" relationship between Defendant's alleged negligence and the damages sustained a question of fact arises. *See Sejfuloski v. Michelstein & Associates, PLLC*, 137 A.D.3d 549, 550 (1st Dept. 2016) (holding that "[q]uestions of fact exist[ed] … with regard to whether, but for the negligence of the firms, plaintiff would have recovered"); *see also Harleysville Worcester Ins. Co. v. Hurwitz*, 2005 WL 774166, at *4 (S.D.N.Y. 2005) (whether attorney's "failures amount to negligence is ultimately a question of fact for the jury to determine"); *Lundy v. Wells Fargo Bank, N.A.*, 2011 WL 13128267, at *5 (S.D.N.Y. 2011) ("Plaintiff's claim for gross negligence presents questions of fact inappropriate for resolution at the motion to dismiss stage"); *Travelers Indem. Co. of Conn. v. Losco Group, Inc.*, 136 F.Supp.2d 253, 256 (S.D.N.Y. 2001) ("The issue of gross negligence is a question of fact for a jury to determine"). Defendant's request that the legal malpractice claim be denied on the theory of a lack of "but for" causation should be denied, particularly here at the pleading stage.

Defendant further asserts that the Amended Complaint should be dismissed because its "strategy to proceed with supervised visitation to obtain favorable reports to confirm supervision was unnecessary, was a reasonable course of action." Plaintiff contends that Defendant's strategy

was not a reasonable course of action given the heighten burden of a "substantial change in circumstances" it would require Plaintiff to overcome to obtain unsupervised visitation as well as the adverse inference imputed on Plaintiff as a result of consenting to supervised visitation. A determination of whether Defendant's strategy was reasonable is a factual question that should not be decided at the pleading stage as it requires further development of facts as well as expert testimony. *See Rubens v. Mason*, 387 F.3d 183, 190 (2d Cir. 2004) (holding that a determining of whether an attorneys "alleged failures were negligent or merely reasonable tactical decisions presented a question of fact that could not be resolved on summary judgment"); *Greene v. Payne, Wood & Littlejohn*, 602 N.Y.S.2d883, 885 (2nd Dept. 1993) (affirming denial of summary judgment where the question was whether defendants' failure to plead separately a pendant state law claim in federal court was negligent or "an honest mistake of judgment where the proper course of action was open to reasonable doubt").

Lastly, Defendant maintains that Plaintiff's claims belie the ultimate outcome of the custody trial. This argument is a red-herring. Defendant's contentions ignore that fact that the Plaintiff's Amended Complaint alleges that the unfavorable outcome of the Matrimonial Action can be directly tied back to their negligent conduct at the outset of the litigation. Plaintiff has alleged that he would have received a different and more positive outcome but for Defendant's negligent conduct. *See Tooma v. Grossbarth*, 995 N.Y.S.2d 593, 595 (2nd Dept. 2014) (denying defendant's motion to dismiss claim of legal malpractice where plaintiff alleged but for defendant's negligence he would have received a "different, better and/or more positive outcome"). Indeed, legal malpractice claims always involve a "trial within a trial." *See Landau, P.C. v. LaRossa, Mitchell & Ross*, 2010 WL 1444528, at *4 (N.Y. Sup. Ct. April 7, 2010) ("[A] legal malpractice action has often been described as a trial within a trial.") A question of fact

exists as to whether the outcome of the Matrimonial Action would have been different and more favorable to Plaintiff but for Defendant's negligent conduct.

III.   Plaintiff Has Sufficiently Plead a Claim of Intentional and Negligent Misrepresentation

The elements of a cause of action sounding in intentional misrepresentation are:  (1) a material misrepresentation or concealment of a fact;  (2) knowledge of falsity; (3) intent to induce reliance thereon or deceive; (4) justifiable reliance upon the misrepresentation; and (5) damages. *See Mitchell v. Diji*, 22 N.Y.S. 464, 466 (2nd Dept. 2015).  Plaintiff alleges a litany of material misrepresentation made by Defendant that Plaintiff relied on during the course of its representation.  These include, but are not limited to:  (i)  representing to Plaintiff that Defendant would file an order to show cause seeking unsupervised visitation to induce Plaintiff to retain Defendant only to lconsent two days later to supervised visitation without Plaintiff's consent; (ii) misrepresenting the off-the-record proceedings before the matrimonial court; (iii) agreeing to the appointment of Dr. Alan Ravitz as the forensic custody evaluator in *Zappin v. Comfort* as an apparent "kick-back" to Dr. Ravitz without disclosing that Defendant had an ongoing business relationship with Dr. Ravitz in the Bethenney Frankel divorce; and (iv) deliberately misrepresenting Justice Kaplan's philosophy on supervised visitation to induce Plaintiff to continue litigating, particularly where Defendant advertised in the same journal literature Justice Kaplan wrote about the virtues of supervised visitation.  (*See* Amended Compl. at Ex. 6.) Defendant's only contention in arguing for dismissal of the claim is the assertion that Plaintiff failed to identify any misrepresentation made to him.  As shown above, Plaintiff has alleged several misrepresentations made by Defendant to him in the Amended Complaint.

IV.     <u>Plaintiff Has Sufficiently Plead a Claim for Excessive Billing</u>

Plaintiff alleges that Defendant breached its contract with Plaintiff as well as its duty of good faith and fair dealing by excessively billing Plaintiff.  During Defendant's representation, Plaintiff asserts (and Defendant does not deny) that Defendant failed to file a single formal motion, appear on-the-record in the Matrimonial Action or take any other concrete steps to further or advance Plaintiff's position in the litigation.  (*See* Amended Compl. at ¶¶ 61-63.)  Defendant's tangible legal services consisted of drafting and filing a two-page complaint for divorce, boilerplate financial discovery demands and attending four hour long off-the-record appearances with the court (two by telephone).  (*See id*.)  Yet, as the complaint details, Defendant demanded $80,000 in legal fees – over $64,000 of which Plaintiff paid.  (*See id*.)  Plaintiff alleges that the vast majority of Defendant's legal services consisted of drafting faux "settlement proposals" that were never presented to Plaintiff's ex-wife and "parental access schedules" providing for unsupervised visitation that were never sent to the matrimonial court.  (*See id.*)  Plaintiff alleges that Defendant's billing was wasteful, excessive and patently unproductive to advance Plaintiff's case.  (*See id.* at ¶ 61.)

Defendant argues that the claim should be dismissed because Plaintiff paid all of Defendant's invoices and failed to object to them.  However, Plaintiff alleges in the Amended Complaint that he specifically objected to Defendant's invoices over a dozen times.  (*See id*. at ¶ 62.)  Accordingly, Plaintiff's claim for excessive legal fees should not be dismissed.

V.     <u>Plaintiff Has Sufficiently Plead a Claim under N.Y. Judiciary Law § 487</u>

Plaintiff asserts that Defendant should be held liable under N.Y. Judiciary Law § 487.  That statute provides that an attorney who "is guilty of any deceit or collusion, or consents to any deceit or collusion, with the intent to deceive the court or any party … he forfeits to the party the injured

treble damages, to be recovered in a civil action." N.Y. Judiciary Law § 487.  Indeed, a "violation of Judiciary Law § 487 may be established either by defendant's alleged deceit or by an alleged chronic, extreme pattern of legal delinquency by the defendant." *Boglia v. Greenberg*, 882 N.Y.S.2d 215, 217 (2nd Dept. 2006).

Here, Plaintiff has alleged facts sufficient to show that Defendant engaged in a pattern of deceit by misrepresenting its proposed course of strategy to induce Plaintiff to retain and continue to retain Defendant, falsely representing to Plaintiff the off-the-record proceedings before the matrimonial court, withholding material information about the proceeding and failing to disclose its prior relationship with Dr. Ravitz.  (*See id*. at ¶¶ 17-18, 25-26, 37-38, 40-4, 47-48, 71, 94-95.) Moreover, Plaintiff has alleged facts to show a "chronic, extreme pattern of legal delinquency" by Defendant, which includes repeatedly binding Plaintiff to detrimental positions without his consent, failing to seek appropriate remedies at the outset of the litigation and failing to adequately protect Plaintiff's interests throughout the litigation.  (*See* Amended Compl. at ¶ 71.)  Moreover, Plaintiff alleges that Defendant intentionally and purposely engaged in a strategy to deceive Plaintiff and prolong the litigation, which could have been concluded at the outset with a *pendente lite* hearing.  (*See id*. at ¶¶ 17-18, 25-26, 37-38, 40-4, 47-48, 71, 94-95.)  And, contrary to Defendant's assertion, Plaintiff has alleged damages resulting from Defendant's deceitful conduct and chronic pattern of delinquency, which includes the cost of supervised visitation, legal fees paid to Defendant, fees paid to Dr. Ravitz and fees incurred for subsequent legal work to repair the damage caused by Defendant.  (*See id*. at ¶ 28.)  Thus, Plaintiff's Amended Complaint pleads sufficient facts to state a claim under N.Y. Judiciary Law § 487.  *See Rock City Sounds, Inc. v. Bashian & Farber, LLP*, 74 A.D.3d 1168, 1172 (2nd Dept. 2010); *Moormann v. Perine & Hoerger*, 886 N.Y.S.2d 49, 51 (2nd Dept. 2009).

Furthermore, Defendant contends that Plaintiff's claim should be dismissed because his exclusive remedy under N.Y. Judiciary § 487 is to "bring an action in the course of the same proceeding," which would be the Matrimonial Action.  The case law on this issue is decidedly mixed.  In *Chevron Corp. v. Donziger*, this Court explained:

> [T]he statute itself [N.Y. Judiciary Law § 487] provides that an attorney who violates it "forfeits to the party injured treble damages, to be recovered in a civil action."  The fact that it does not restrict the recovery of treble damages to a claim in which the violation occurs, even if the injured party then was aware of the misconduct, is significant, as the reading advanced by the Donziger Defendants would be inconsistent with the plain statutory language.

*Chevron Corp. v. Donziger*, 871 F.Supp.2d 229, 261 (S.D.N.Y. 2012).  Indeed, it would be impossibly difficult for Plaintiff to assert claims for damages in the Matrimonial Action against his own prior attorneys, particularly when the matter has reached final judgment.  Moreover, the "same proceeding" rule is not applicable where Plaintiff is not seeking to collaterally attack the judgment in the Matrimonial Action, but rather recover damages in the form of fees and expenses incurred as a result of Defendant's conduct.  *See Melcher v. Greenberg Traurig LLP*, 24 N.Y.S.3d 249, 251 (1st Dept. 2016) (rejecting assertion that plaintiff cannot bring a N.Y. Judiciary Law § 487 claim in a separate action where plaintiff "does not seek to collaterally attack any prior adverse judgment … [but] seeks to recover lost time value of money and excess legal expenses incurred … as a proximate result of defendant's alleged deceit").  Defendant's jurisdictional argument must consequently be rejected.

## CONCLUSION

For the foregoing reasons, Defendant's pending motion to dismiss should be denied in its entirety.

Dated:          January 27, 2017
                Huntington, West Virginia

                                Respectfully submitted,


                                _____
                                Anthony Zappin
                                1827 Washington Blvd.
                                Huntington, West Virginia
                                (304) 654-6195 (tel.)
                                anthony.zappin@gmail.com
                                *Plaintiff, Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th day of January 2017, I filed with the Clerk of the Court and served on Defendant's counsel listed below the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss via CM/ECF:

Jonathan B. Bruno
Deborah M. Isaacson
477 Madison Avenue, 20th Floor
New York, NY 10022
*Attorneys for Defendant*
*Aronson Mayefsky & Sloan LLP*

/s/ *ANTHONY ZAPPIN*_____
Anthony Zappin